United States District Court
For the District of Rhode Island

John Smith,
    Plaintiff,

vs.                                                            C.A. No. 1:18-cv-126-M-PAS

Brown University in Providence in the
State of Rhode Island and Providence
Plantations,
    Defendant

**Defendants' Memorandum of Law
In Support of Objection to
Plaintiff's Motion to Proceed Under Pseudonym**

**Introduction**

This is a "breach of educational contract" civil action in which the plaintiff seeks to prosecute under the pseudonym "John Smith." It emanates from the phrase, "Summer 2015: Suspended for Disciplinary Reasons," that Brown University placed on Mr. Smith's permanent academic transcript. ECF No. 1 at 3. The action does not dispute that Mr. Smith was suspended, nor does it dispute or attack the underlying Code of Student Conduct violations for which he was found responsible and suspended.

Instead, plaintiff asserts that merely including the date he was suspended, the fact he was suspended and the general reason he was suspended on his transcript breached the educational contract he had with Brown. He seeks to enjoin Brown from "publishing his Official Academic

1

Transcript with a transcript remark regarding his suspension[,]" as well as damages for "Brown's actions in allowing its registrar to blemish his transcript [thus] impair[ing] Mr. Smith's ability to pursue further education and employment opportunities." ECF No. 1 at 5, 6. Stated most simply, he wants this Court to require Brown to remove that phrase from his official transcript.

Plaintiff, however, asks this Court to permit him to pursue injunctive relief and compensatory damages under the pseudonym "John Smith." He asserts two basic reasons. First, he argues that if he were required to litigate his breach of contract claim under his real name it would expose his "sexual history," which he characterizes as a "very private matter" of a "sensitive and highly personal nature," that may in turn subject him to "harassment, ridicule or personal embarrassment." Second, he argues that if required to litigate his legal claims under his true identity his ability "to launch a career and find opportunity" would "almost certainly evaporate," presumably because there would then be public judicial records showing that he had been suspended for disciplinary reasons while at Brown.

Rules 10(a) and 17(a) of the Federal Rules of Civil Procedure, however, represent a strong presumption and policy that plaintiffs who choose to invoke the federal judicial power will do so under their true identities. That presumption and policy is the product of constitutional concerns and principles of fundamental fairness. The court decisions addressing the issue of pseudonymous complaints stress the constitutional importance of open courts and public scrutiny of judicial proceedings, and the importance of identifying the parties as part of that publicness. Consequently, courts have determined the rules requiring the proper identification of the parties should not be set aside lightly, and only as a "rare dispensation." As the case authorities that follow demonstrate, the plaintiff has not set forth sufficient reasons why he should be granted such a dispensation from litigating his legal claim in his own name.

**Argument**

**I.)    The Federal Rules of Civil Procedure reflect the constitutionally embedded presumption of openness in judicial proceedings, and principles of fundamental fairness, that prohibit parties from invoking the federal judicial power under a pseudonym in all but the most extraordinary circumstances.**

"[L]awsuits are public events and the public has a legitimate interest in knowing the facts involved in them. Among those facts is the identity of the parties." *Doe v. Deschamps*, 64 F.R.D. 652, 653 (D. Mont. 1974). Consequently, courts have recognized "the paramount importance of open courts"[1] and the "universal public interest in access to the identities of the litigants."[2] These long-standing principles are embodied in the Federal Rules of Civil Procedure. Rule 10(a) requires the title of the complaint to "name all parties" and Rule 17(a) requires that actions "be prosecuted in the name of the real party in interest[,]" reflecting the recognition that "[t]he public has an interest in knowing what the judicial system is doing," which "is frustrated when any part of litigation is conducted in secret." *Doe v. Smith*, 429 F.3d 706, 710 (7th Cir. 2005).

Rules 10(a) and 17(a) thus serve the vital purpose of "facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly[,]" *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 183, 188-89 (2d Cir. 2008), and although permitting a plaintiff to proceed under a fictitious identity is within the discretion of a court, it is considered a "rare dispensation." *See Doe v. Public Citizens,* 749 F.3d 246, 273 (4th Cir. 2014) (internal citation omitted); *U.S. v. Microsoft Corp.*, 56 F.3d 1448, 1464 (D.C. Cir. 1995). Thus, there is a "strong presumption" against litigation by

---

[1] *Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate,* 596 F.3d 1036, 1046 (9th Cir. 2010).

[2] *Doe v. Meglass,* 654 F.3d 404, 411 (3rd Cir. 2011).

pseudonym. *Luckett v. Beaudett*, 21 F. Supp. 2d 1029, 1029 (D. Minn. 1988) (internal citation omitted).

This "strong presumption" is premised upon both constitutional values and considerations of fairness. From a constitutional perspective, "[t]here is a First Amendment interest in public proceedings and identifying the parties to an action is an important part of making it truly public[,]" *id.; see also Meglass*, 654 F.3d at 408 ("Identifying the parties to the proceedings is an important dimension of publicness.  The people have a right to know who is using their courts.") (quoting *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997)), and thus there is a "customary and constitutionally embedded" presumption of openness in judicial proceedings. *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992) (quoting *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981) It follows that, "[w]hen a party invokes the judicial powers of the United States, [he or] she invites public scrutiny of the dispute and the proceeding." *Luckett*, 21 F. Supp. 2d at 1029.

The Rules and the court decisions also recognize that an important part of the presumption that plaintiffs who invoke a court's governmental judicial power must do so in their own name is the basic notion of "fundamental fairness." *See Rose v. Beaumont Independent School District*, 240 F.R.D. 264, 267 (E.D. Tex. 2007). That notion recognizes that when a party in a civil action brings an action of their own volition, to vindicate their own private interests, fairness usually dictates that such a plaintiff stand by his or her charges publicly – unless there are very significant reasons to excuse them. *Id.*  "[T]he mere filing of a lawsuit can have significant effects on a defendant[,] because the public charges included in a civil lawsuit can cast a shadow over the defendant's reputation until the case is resolved." *Id.* (internal citation omitted). *Accord, Frank*, 951 F.2d at 323-24; *Southern Methodist Univ. Assn. of Women Law Students v. Wynne & Jaffe*,

4

599 F.2d 707, 713 (5th Cir. 1979); *Doe v. Indiana Black Expo, Inc.*, 923 F. Supp. 137, 141 (S.D. Ind. 1996); *Doe v. Shakur*, 164 F.R.D. 359, 361 (S.D.N.Y. 1996). Thus, in the absence of an exceptional and well supported justification for being permitted to prosecute a civil action under a pseudonym, "[b]asic fairness requires that where a plaintiff makes such accusations publicly, [she] should stand behind those accusations publicly[.]" *Indiana Black Expo, Inc.,* 923 F.Supp. at 141-42.

Indeed, because the presumption of openness is based on First Amendment considerations concerning the public's right to open and public judicial proceedings in order to evaluate what the judicial system is doing, some courts have held that, even if a defendant does not object, or even agrees to the plaintiff proceeding under a pseudonym, courts must still undertake the required analysis and make an independent determination on whether the circumstances warrant the rare dispensation of permitting the propriety of the use of a pseudonym. *See, e.g., Doe v. Public Citizens*, 749 F.3d at 274 (holding that, "when a party seeks to litigate under a pseudonym, a district court has an independent obligation to ensure that extraordinary circumstances support such a request by balancing the party's stated interest in anonymity against the public's interest in openness and any prejudice that anonymity would pose to the opposing party"); *Doe v. Blue Cross and Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997) ("[W]e would be remiss if we failed to point out that the privilege of suing or defending under a fictitious name should not be granted automatically even if the opposing party does not object.  The use of fictitious names is disfavored, and the judge has an independent duty to determine whether exceptional circumstances justify such a departure from the normal method of proceeding in federal courts.").

Because of First Amendment considerations, parties cannot simply agree that the plaintiff may proceed by pseudonym. Court proceedings are presumptively open exercises of governmental

5

judicial power, and parties cannot simply agree to close them, or to use fictitious identities, without a court's determination that there are good and sufficient reasons to set that presumption aside. [3]

> **II.)   Mr. Smith argues that he should be allowed to litigate his claims against Brown under a pseudonym to shield his suspension for "disciplinary reasons" from public view, because it would reveal his sexual history which is of a "sensitive and highly personal nature" and subject him to harassment, ridicule, or personal embarrassment.**

To permit Mr. Smith to litigate claims under a pseudonym, this Court must undertake an analysis that balances his stated need for anonymity against the strong presumption that parties will publicly proceed in a court under their true identities – a presumption based on the federal rules of civil procedure, constitutional considerations, and fundamental fairness. *See Does I thru XXIII v. Advanced Textile Corp.,* 214 F.3d 1058, 1068 (9th Cir. 2000).

Courts have on occasion held that the presumption favoring openness in judicial proceedings may be overcome in cases that involve matters of a "highly sensitive and personal nature" that, because of their intrinsic character, constitute a substantial privacy right. *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d at 189-90 (citing *M.M. v. Zavaras,* 139 F.3d 798, 803 (10th Cir. 1998) and *Roe v. Aware Woman Ctr. for Choice, Inc.,* 253 F.3d 678, 685 (11th Cir. 2001)); *Advanced Textile,*

---

[3] As this Court is aware, there have been numerous civil actions brought against Brown by current or former students in this Court, complaining about the results of internal disciplinary proceedings, and they have uniformly been brought under pseudonyms. The University proceedings are intended to provide as great a degree of confidentiality as possible, and the unstated assumption in the civil actions brought against Brown under pseudonyms appears to be that the federal court actions should proceed in the same manner. But they are obviously two vastly different proceedings, and a federal court challenge to a university's student conduct decision is not a mere extension of the university's internal processes. A federal court action exercises constitutionally created government power - the judicial power of the government - the university's internal process does not, and a federal court action is presumptively open to the public because of First Amendment considerations; a university's internal process is not. One has no relationship to the other.

214 F.3d at 1068. Described as matters of the "utmost personal intimacy[,]" *see Stegal,* 653 F.2d at 185, examples include an action brought by a transsexual for related medical coverage;[4] a plaintiff that did not want to reveal his sexual orientation[5]; plaintiffs who are sexually assaulted as minors;[6] an adult sexual assault victim;[7] a plaintiff who sought to restrain dissemination of a sexually explicit videotape on the internet;[8] a plaintiff claiming to have been impregnated by artificial insemination of her physician's own sperm, concerned about the effect on her two children born out of these pregnancies;[9] and a plaintiff seeking insurance coverage for treatment of significant mental health and substance abuse treatment.[10] Other examples of the type of matters that are considered sufficiently sensitive and of a highly personal nature to warrant the "rare dispensation" of litigation by pseudonym are abortion;[11] status as an AIDS patient;[12] coercion of minor teenage girls to engage in explicit and graphic homosexual activity;[13] and status as a child

---

[4] *Doe v. Blue Cross & Blue Shield of Rhode Island*, 794 F.Supp.72 (D.R.I. 1992) (granted).

[5] *Doe v. Burkland*, 808 A.2d 1090 (R.I. 2002) (denied); *but see Doe v. United Servs. Life Ins. Co.,* 123 F.R.D. 437, 439 (S.D.N.Y. 1988) (granted).

[6] *Rose v. Beaumont Independent School District*, 240 F.R.D. 264 (E.D. Tex. 2007) (denied); *Doe v. Kolko*, 242 F.R.D. 193 (E.D.N.Y. 2006) (granted).

[7] *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2000) (trial court's denial vacated and remanded for reconsideration).

[8] *Doe v. Szul Jewelry, Inc.*, 2008 WL 2157893 (Sup. Ct. N.Y.) (granted).

[9] *James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993) (trial court denied vacated and remanded for reconsideration).

[10] *Doe v. United Behavorial Health,* 2010 WL 5173206 (E.D.Pa.) (granted).

[11] *Roe v. Aware Woman Center for Choice, Inc.*, 253 F.3d 678, 685 (11th Cir. 2001).

[12] *WGA v. Priority Pharmacy, Inc.*, 184 F.R.D. 616, 617 (E.D. Mo. 1999)

[13] *Plaintiff B v. Francis*, 631 F.3d 1310, 1317-19 (11th Cir. 2011) (granted).

pornography victim suing the alleged perpetrator.[14] A transcript notation stating: "Summer 2015: Suspended for Disciplinary Reasons" is not remotely similar to any of these examples.

Thus, the question for the Court is whether identifying the plaintiff as having been privacy interest" that warrants granting him a dispensation from litigating in his own name. Brown respectfully asserts it does not. The entry at issue - "Summer 2015: Suspended for Disciplinary Reasons" - does not in and of itself connote "sexual history" or activity. Moreover, the plaintiff does not claim that he was the victim of a sexual assault, nor does he dispute he that he was the perpetrator of the underlying Code of Student Conduct violations, which he volunteers in his complaint to be based upon sexual misconduct.

Equally important, however, is that the issue presented by the plaintiff's civil action is limited to whether Brown breached its educational contract with the plaintiff by including that entry on his transcript. The relationship between a student and a private university is essentially contractual in nature. *Doe v. Brown University*, 209 F.Supp.3d 460, 472 (D.R.I. 2016) (citing *Gorham v. St Raphael Academy*, 853 A.2d 28, 34 (R.I. 2004)). The terms of the educational contract may be found in student manuals, codes and other university policies, *see Mangla v. Brown University*, 135 F.3d 80, 83 (1st Cir. 1983), and the standard for interpreting them is one of "reasonable expectation," that is, "the meaning the university reasonably should expect the student to take from them." *Doe v. Brown University*. 210 F.Supp.3d 310, 330 (D.R.I. 2016) (citing *Havlik v. Johnson & Wales University*, 509 F.3d 25, 34 (1st Cir. 2007)). The "reasonable expectation" standard is an "objective reasonableness" standard, *Doe v. Western New England University*, 228 F.Supp.3d 154,170 (D. Mass. 2017) (quoting *Walker v. President & Fellows of Harvard College*,

---

[14] *Doe v. Oshrin*, 299 F.R.D. 100, 104-05 (D.N.J. 2014) (granted).

82 F.Supp.3d 524, 530 (D. Mass. 2014)), and thus, as is with all contracts generally, the interpretation of the plaintiff's educational contract with Brown will be a question of law for the court to determine, *see Western New England University*, 228 F.Supp.3d at 170; *Walker*, 82 F.Supp.3d at 529; *see also King v. Grand Chapter of Rhode island Order of Eastern Star,* 919 A.2d 991, 999 (R.I. 2007) ("contract interpretation is a question of law that we review de novo"); *1800 Smith Street Associates, LP v. Gencarelli,* 888 A.2d 46, 52 (R.I. 2005) ("Contract interpretation is a question of law ** *."). Thus, the question to be decided under plaintiff's complaint will is a question of law for the Court to be determined by reference to the interpretation of Brown policies, such as the Code of Student Conduct which plaintiff relies upon to assert his right to have a transcript without the entry at issue, and the details of the sexual encounter that resulted in the disciplinary suspension are unnecessary to resolve the issue presented. This is primarily a case where the text of the Code of Student Conduct, and any other policy or writing that is deemed to make up the plaintiff's educational contract, will be reviewed and interpreted by the Court to determine whether, as a matter of law, an objectively reasonable student – suspended for a disciplinary reasons, would interpret that contract to prohibit Brown from including a permanent notation to that effect on their official transcript.

> **III.)** **Potential economic harm and embarrassment to a plaintiff that might flow from bringing a lawsuit, is insufficient to justify invoking the federal judicial power under a pseudonym.**

In his supporting memorandum, plaintiff also argues that "[h]e has a legitimate concern that," if he must use his real name in this action, "inquiry" into the matter resulting in the sexual misconduct finding "would tar his name and cause him further injury." ECF No. 2-1 at 3. He argues further that, "[h]e is at the point in his young adult life in which he is attempting to launch a career and find opportunity[,]" and should his name and sexual history be released" in public court filings,

9

"those opportunities…will almost certainly evaporate." ECF No. 2-1 at 3. Potential economic harm and embarrassment, however, have been rejected as a sufficient justification, in and of themselves, to proceed under a psuedonym.  *See, e.g. Meglass*, 654 F.3d at 408; *Doe v. Temple University*, 2014 WL 4375613 * 2 (E.D. Pa.); *K.H. v. Holtzapple*, 299 F.R.D. 438 (M.D. Pa. 2014); *Indiana Black Expo, Inc.*, 923 F.Supp. at 142; *Doe v. Hallock*, 119 F.R.D. 640, 644 (S.D. Miss. 1987). *Hallock* and *Indiana Black Expo, Inc.* were employment discrimination actions under Title VII and the Americans with Disabilities Act respectively - the former involving sexual harassment of the plaintiff and the latter involving the plaintiff's mental health.  *Hallock*, 119 F.R.D. at 641; *Indiana Black Expo, Inc.*, 973 F.Supp. at 141.  *Meglass* was a Section 1983 claim based on the defendants' publication of emails and flyers characterizing plaintiff as a potentially mentally unstable pedophile. 654 F.3d at 407.  In each case the court acknowledged that requiring the plaintiff to reveal their identity in pursuing their claims might make their future employment more difficult. But in each case the court determined that potential economic harm was not sufficient to overcome the strong presumption against the use of pseudonyms by adults seeking relief in a public judicial forum. And in each case the conduct that caused the plaintiff to want to proceed under a pseudonym was the defendant's conduct, not, as here, the plaintiff's own conduct.

*Doe v. Temple University* and *K.W. v Holtzapple*, are particularly instructive because each did involve situations where anonymity was sought based upon the plaintiff's own actions. In *Doe v. Temple University,* the plaintiff had been expelled from the University after a student disciplinary process had found he had committed a sexual assault. 2014 WL 4375613 *1.  He filed a civil action alleging breach of contract and gender discrimination and sought permission to proceed under a pseudonym. *Id.* He asserted that, notwithstanding his denial, if the university's finding that he committed a sexual assault was publicly known it would result in "further damage

to his personal and professional reputation[,]" and render it unlikely that he would get into medical school if he was unsuccessful in getting his record cleared. *Id.* *2. The Court succinctly stated: "this is exactly the kind of embarrassment [and] economic harm that does not support the use of a pseudonym." *Id.* (internal quotations and citation omitted).

Similarly, *Holtzapple* involved a complaint filed by six students at Bucknell University who had been sanctioned for possession of marijuana and firearms while residing in a Bucknell owned fraternity house. 299 F.R.D. at 439. They subsequently brought a civil action claiming the search that discovered the contraband violated the federal constitution's Fourth Amendment. *Id*. They sought leave to proceed under fictitious names because they were concerned that if their possession of contraband was publicly disclosed in their lawsuit, it would damage their standing with fellow students and professors, and potentially interfere with future opportunities for higher education and employment. 299 F.R.D. at 439-40. Just as in *Doe v. Temple University,* the Court denied the request, holding that the fact a plaintiff might suffer this type of embarrassment or economic harm was not sufficient to overcome the general presumption that the identities of the parties to a lawsuit must be treated as public information. *Id.* at 940.

It follows that, to the extent that plaintiff's request to proceed by the pseudonym "John Smith" encompasses economic concerns and embarrassment about future employment or graduate education opportunities, under the authorities described above, that concern is insufficient to justify permitting him to anonymously litigate his allegations against Brown University in a public judicial forum, when weighed against the constitutionally-embedded presumption of openness in judicial proceedings. There is no reason suggesting that his lawsuit is not one that is likely to engender widespread publicity. If he is successful in having this court enter an order enjoining Brown from including the "Suspended for Disciplinary Reasons" entry on his transcript, it is highly

unlikely that any persons or entities that he chooses to have his transcript published to will be aware of this court action and therefore that such an entry was once on his transcript, and the fact that it at one time was, will remain hidden from them.

## Conclusion

As set forth in the beginning of this memorandum, Rules 10(a) and 17(a) of the Federal Rules of Civil Procedure represent a strong presumption that plaintiffs who choose to invoke the federal judicial power are required to do so under their true identities, and courts have determined the rules requiring the proper identification of the parties should not be set aside lightly.

For all the above-stated reasons, defendants respectfully submit that Mr. Smith has not overcome the strong presumption against a plaintiff's use of a pseudonym, and this Court should order plaintiff to file a complaint under his real name in accordance with Rules 10(a) and 17(a) of the Federal Rules of Civil Procedure, within a time to be specified by the Court, and if plaintiff fails to do so, the Court should dismiss the "John Smith" complaint with prejudice.

Defendant,
By it attorney

/s Thomas R. Bender
Thomas R. Bender   # 2799
Associate Counsel
Brown University
Box 1913
Providence, RI 02912
(401) 863-5466 (Phone)
thomas_bender@brown.edu

Certificate of Service

I certify that on April 9, 2018, I caused a copy of this Memorandum of Law in Support of Objection to Plaintiff's Motion to Proceed Under Pseudonym to be served upon counsel of record via the Court's CM/ECF system.

/s/ Thomas R. Bender

Thomas R. Bender